## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| ISIAH WILSON, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )    CIVIL ACTION NO. 5:06-CV-1703-KOB |
| | ) |
| MICHAEL ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

### I. Introduction

The Claimant, Isiah Wilson, filed an application for Supplemental Security Income

payments on December 16, 2003, alleging disability commencing on June 28, 2003, due to high

blood pressure, diabetes, and illiteracy.  The claim was initially denied on April 30, 2004.

Thereafter, the Claimant filed a timely written request for hearing on May 16, 2004.  The Claimant

previously filed an application for Disability Insurance Benefits and Supplemental Security

Payments on December 29, 2000.  This application was eventually denied by an administrative law

judge ("ALJ") on June 27, 2003.  The Claimant has exhausted his administrative remedies, and this

court has jurisdiction under 42 U.S.C. §§ 405(g) and 1631(c)(3).  For the reasons stated below, the

decision of the Commissioner will be AFFIRMED.

### II. Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person

cannot

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

To make this determination, the Commissioner employs a five-step, sequential evaluation process:

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app.1?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520, 416.920.

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if his factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). "No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*, but will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not only look to those parts of the record that support the decision of the ALJ, but it must also view the record in its entirety and take account of evidence that detracts from the evidence on which the ALJ relied. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

### III. Facts

The Claimant was forty-six years old at the time of the administrative hearing and has a ninth grade education. (R. 512). His past work experience includes employment as a stacker, pallet builder, material handler, forklift operator, warehouse worker, painter, and handyman. (R. 522). According to the Claimant, he became disabled on June 28, 2003, due to high blood pressure, illiteracy, and diabetes. (R. 291). The Claimant is presently unemployed. (R. 260).

The ALJ referenced the evidence of the June 27, 2003 determination, but he did not incorporate the prior ALJ's findings or opinion. (R. 20).

The UAB Health Center in Huntsville provided medical records from February 21, 2003 through November 5, 2003 of Claimant's treatment for diabetes mellitus, hypertension, and ulcerative colitis. (R. 305-21). The medical evidence showed that the Claimant has a history of ulcerative collitis and was treated at UAB Medical Center, as well as the Digestive Disease Center. (R. 305-21, 322-24). On November 17, 2003, the Claimant was seen at the Digestive Disease Center where his ulcerative colitis diagnosis was confirmed. (R. 322-24). The Claimant underwent a follow-up colonoscopy at Huntsville Hospital on December 4, 2003. (R. 329-41). This test revealed two polyps and ulcerative colitis in remission, and he was instructed to have a

repeat colonoscopy in two years.  (R. 322-24).

The Diabetes Control Center provided medical records from December 2003 through February 11, 2004, which indicate the Claimant received treatment and information on diabetes management.  (R. 342-53).  Dr. Ramann Nallamala also treated the Claimant for his diabetes.  (R. 390-403A).

On March 2, 2004, at the request of DDS, Dr. Sherlee Vargas evaluated the Claimant at the request of DDS.  (R. 355-59).  The Claimant reported a history of special education and stated that he never learned to read.  (R. 356).  Claimant admitted a history of heavy drug abuse prior to 1983, including "marijuana, Ts, blues, speed pills and heroin."  (R. 356).  The Claimant took a Wechsler Adult Intelligence Scale-III test (WAIS-III).  (R. 357-58).  He obtained a verbal IQ score of 62, a performance IQ 60, and a full-scale IQ score of 58.  (R. 357-58).  The Claimant complained of blurred vision and stated that he did not have corrective glasses.  (R. 358).  He also stated that he felt "angry and depressed" on the day of the testing.  (R. 358).  Dr. Vargas noted that previous testing results from his DDS records dated November 16, 2001, indicated borderline intellectual functioning.  (R. 358).  Dr. Vargas indicated that the IQ results obtained on the current tests were not reliable estimates of Claimant's current level of intellectual functioning.  (R. 358).  The Claimant was diagnosed with major depressive disorder, "a learning not otherwise specified," a history of polysubstance abuse, a history of childhood sexual abuse, and a personality disorder not otherwise specified.  (R. 355-59).  Dr. Vargas specified that the Claimant cooperated with a somewhat negative demeanor throughout the session.  (R. 359).  His motivational level was low.  (R. 359).  Dr. Vargas opined that Claimant's ability to respond appropriately to supervision, coworkers, and work pressures in a work setting was considered to be moderately impaired at that

time based upon his emotional status (major depressive disorder, moderate).  (R. 359).

A CT scan on June 8, 2004 revealed a disc protrusion at L4-5 and a slight protrusion at L5-S1.  (R. 378-80).  Dr. John Johnson at the Spine and Neurosurgery Center recommended that Claimant receive conservative treatment.  (R. 404-09).  A subsequent MRI on April 26, 2005 revealed degenerative changes of the lower two levels of the lumbar spine and a disc herniation at L4-5.  (R. 460-72).  Dr. Johnson saw the Claimant again on May 19, 2005.  (R. 460-72).  The Claimant reported that the pain he was having in his back and leg was not bad enough for him to consider any type of surgical intervention.  (R. 464).

The Claimant has a history of treatment at the Mental Health Center of Madison County for reported depression and paranoia.  (R. 410-44, 445-56, 457-59, 473-75).  Claimant received treatment from Drs. Hancock and Lindsay as well as Mr. Hoyt, a therapist.  (R. 473-75).  Claimant reported that he took his medication for major depression with psychotic features; however, on June 2, 2004, he stated that he was still drinking "12-13 beers over the weekend."  (R. 419).  His Global Assessment of Functioning ("GAF") scores were 55 or greater during his treatment at the Mental Health Center.  (R. 453).  The ALJ noted that the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorder: DSM-IV 34 indicates that a GAF score of 51-60 is indicative of no greater than moderate symptoms or moderate difficulty in social, occupational or school functioning.  (R. 21).  The only document in the record from Dr. Lindsay is a letter dated October 4, 2005, which concludes that Claimant suffers from seven various ailments and that Claimant cannot perform substantial gainful work.  (R. 474).

The ALJ found that the Claimant's illiteracy is not firmly established in the record, and that the record did not reflect his allegation of special education.  Instead, the record reflected that he

put forth no effort while he was in school.  (R. 108).  In addition, the record indicates that Claimant

began his tenth grade year, but did not finish it.  The ALJ also found that, while the Claimant had

an impairment or combination of impairments, it did not meet or medically equal one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and

416.926).  (R. 22).  The ALJ referenced the Daily Activities Questionnaire and reiterated the fact

that Claimant is able to care for himself and visits or talks to friends on a daily basis.  (R. 279-83).

Claimant also testified that he sometimes drives a car or rides with someone else.  (R. 281).

The ALJ did not consider the IQ scores obtained through Dr. Vargas's testing because Dr.

Vargas stated that they are not a reliable estimate of the Claimant's current level of intellectual

functioning.  (R. 22, 358).  However, the ALJ did take Claimant's mental state into account

through the determination that Claimant had borderline intellectual functioning and moderate

difficulty with concentration, persistence, and pace.  (R. 359).  In addition, the ALJ stated that no

evidence shows that Claimant's mental impairment has ever resulted in any episodes of

deterioration or decompensation of extended duration.  (R. 22).  Dr. Charles Herlihy performed a

consultative examination on Claimant with regard to Claimant's level of severity.  (R. 200-01).

The ALJ accepted Dr. Charles Herlihy's opinion, which stated that, although Claimant had IQ

scores below 70, he did not meet the other elements of 12.05C or 12.05D of the Listings of

Impairments.  (R. 200-01).

The ALJ next assessed whether Claimant retained the residual functional capacity ("RFC")

to perform the requirements of his past relevant work.  (R. 22-23).  He considered all symptoms

and opinion evidence in accordance with the requirements of 20 C.F.R. 416.929 and SSRs 96-4p

and 96-7 as well as 20 C.F.R. 416.927 and SSRs 96-2p, 96-5p, and 96-6p.  (R. 22).  After

referencing the Claimant's testimony, the ALJ concluded that Claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but the Claimant's statements concerning the intensity, duration, and limiting effects of these symptoms are not entirely credible. (R. 23).

To support his finding, the ALJ explained the inconsistencies in Claimant's testimony, which bring his credibility into question. (R. 23-24). Claimant alleged that he does not like to be around people and he angers easily; however, he visits and talks to friends and family every day. (R. 279-83). Dr. Vargas found Claimant to be no more than moderately impaired in his ability to respond appropriately to supervision, coworkers, and work pressures in a work setting. (R. 359). Thus, the ALJ concluded that Claimant's ability to get along with others is not as limited as he alleges. (R. 23). In addition, Claimant alleged problems with blurred vision during IQ testing; however, his eye exam revealed that he needed eyeglasses, which would correct his vision to 20/20. (R. 325-28). Claimant also reported that he had lower back and hip pain; however, he said it was not bad enough to consider any type of surgical intervention or epidural steroid treatment. (R. 464). The ALJ concluded that neither the record nor medical testimony support the conclusion that Claimant is unable to perform lifting; rather, Claimant is able to perform work at least at the medium exertional level. (R. 23). Finally, the ALJ pointed out that Claimant said at the hearing on October 7, 2005 that he did not work as a forklift operator; however, this occupation is firmly established in the record, including his testimony from the prior claim. (R. 202-15).

On April 22, 2004, Disability Determination Service consultant, LeAnn Hill, conducted an examination of Claimant. (R. 360-77). The ALJ noted that the Ms. Hill's testimony in Exhibit B9F is not given much weight because it she is a non-treating, non-examining source and

additional evidence had been received since that time.  (R. 360-77).  In addition, the ALJ did not give much weight to the treating sources at Mental Health Center of Madison County in Exhibit B18F because the opinions do not contain any specific limitations and simply conclude, without support, that Claimant suffers from seven ailments and is unable to perform substantial gainful work.  (R. 473-75).  The GAF scores obtained at the Mental Health Center are not lower than 55, and such scores are consistent with an impairment that is no greater than moderate in severity.  (R. 453).

Finally, the ALJ determined that the Claimant is capable of performing past relevant work as a material handler, painter, and janitor.  (R. 24).  The vocational expert ("VE") testified that Claimant's past work as a material handler, janitor, and painter were performed, respectively, at the medium, medium, and heavy exertional levels.  (R. 522-23).  The VE also testified that given Claimant's age, education, and past relevant work experience with the RFC as described he would be able to perform all of his past relevant work as it is generally performed in the national economy.  (R. 525).

## IV. Issues Presented

In this appeal, the Claimant argues that the Commissioner erred in two ways.  First, Claimant alleges that the ALJ did not properly apply this Circuit's three-part pain standard. Second, Claimant alleges that the ALJ erred in failing to give sufficient weight to the opinion of Dr. Lindsay, Claimant's treating psychiatrist.  Although the Claimant presents a third issue regarding the substantial evidence supporting the ALJ's decision, the Claimant fails to support his argument with any assertion other than the two issues on appeal.  Consequently, this court will only address the two substantiated issues.

<b>V. Discussion</b>

**A. Application of the Three-Part Pain Standard**

The Claimant argues on appeal that the ALJ erred in his application of the three-part pain standard, in that he did not take Claimant's testimony or the medical evidence into account.

A three-part pain standard "applies when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). The pain standard requires (1) evidence of an underlying medical condition, and (2) *either*: (a) objective medical evidence that confirms the severity of the alleged pain arising from that condition; *or* (b) evidence that the objectively-determined medical condition can be reasonably expected to give rise to the alleged pain. *See Holt* 921 F.2d at 1223. When the ALJ fails to credit a claimant's subjective pain testimony or doctors' reports evidencing an underlying medical condition, he must articulate reasons for that decision. *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). Substantial evidence must support such an articulation of reasons, or the ALJ must accept the pain testimony of the claimant as true. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). However, "the mere diagnosis [of a condition], of course, says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Furthermore, the ALJ cannot reject a claimant's testimony based solely on his or her own observations or on criteria that are unsubstantiated by objective medical evidence. *Johns v. Bowen*, 821 F.2d 551, 556-7 (11th Cir. 1987).

This court finds that the ALJ considered the Claimant's symptoms and properly rejected them as not credible. The ALJ noted that if the Claimant's impairments did exist in such a manner as he claims, they could reasonably be expected to produce the alleged symptoms; however, the

ALJ determined that the Claimant's statements concerning the intensity, duration, and limiting effects of the symptoms are not credible because of his conflicting statements. (R. 23).

The ALJ referenced three ways in which the Claimant's testimony clearly conflicts with either his own prior testimony or medical evidence: (1) his testimony regarding his psychological state, (2) his testimony regarding his physical state, and (3) his testimony regarding his occupation and education. First, the Claimant alleged that he does not like to be around people and he angers easily; yet, the record reflects that he leaves home at least once per day, visits and talks with friends on a regular basis. In addition, Dr. Vargas's examination showed that the Claimant was only moderately impaired in his ability to respond appropriately to supervision, coworkers, and work pressures. The scores from Claimant's treating physicians at the MHC are 55 and above, which indicates that he has no more than moderate limitations.

Second, the Claimant alleged physical problems such as blurred vision and lower back and hip pain. Although the medical records support the Claimant's allegations of vision and back problems, the records contradict his testimony regarding the intensity, duration, and limiting effects of these problems. An eye examination by Dr. James C. Staup, III, O.D. revealed that Claimant's eyesight would be corrected to 20/20 vision simply by using eyeglasses. The Claimant's allegations of lower back and hip pain are also unsubstantial to support his claims regarding the intensity, duration, and limiting effects because Claimant stated that his pain was not bad enough to consider surgical intervention or epidural steroids. The ALJ also noted that Claimant stated that he is incapable of performing lifting. However, the record does not support this conclusion because no physician has restricted Claimant's lifting or carrying activities.

Finally, the Claimant's testimony regarding his occupational and educational history is

inconsistent.  The Claimant denied that he ever worked as a forklift operator.  The record, on the other hand, firmly establishes that he did work as a forklift operator.  The Claimant also testified that he was enrolled in special education classes and did not finish the ninth grade; yet, his school records show that he was enrolled in the tenth grade and never took any special education classes; rather he did not put forth an effort in class.

Consequently, the ALJ clearly articulated his reasons for discrediting the Claimant's symptoms, and his decision is supported by the record through both substantial medical and non-medical evidence.  This court concludes that the ALJ properly administered the three-part pain standard, and he was correct in determining that the Claimant does not meet the second prong of the test.

**B. Sufficient Weight of Treating Physician**

Claimant argues that the ALJ erred in failing to give sufficient weight to the opinion of Dr. Lindsay, the Claimant's treating psychiatrist, and Mr. Gulshan Hoyts, the Claimant's therapist. (Pl.'s Br. 6).  The Claimant alleges that the ALJ's reasons for refusing to credit Dr. Lindsay and Mr. Hoyts's opinions are not supported by substantial evidence.  (Pl.'s Br. 6).

"The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary."  *Osborn v. Barnhart*, 194 F. App'x 654, 667 (11th Cir. 2006) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error."  *Id*.  The Court of Appeals has found "good cause" to exist "where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding."  *Id*.  "A treating physician's report

may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory." *Id.* (quoting *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991).

In Claimant's case, the ALJ specifically found that Dr. Lindsay and Mr. Hoyts's opinions were entitled to little, but not substantial, weight.  The ALJ determined that both opinions are conclusory and do not contain any specific limitations.  The ALJ clearly articulated his decision that Dr. Lindsay's and Mr. Hoyts's opinions are conclusory, which constitutes good cause for giving little weight to their statements; this judgement is reserved for the ALJ.  Consequently, this court concludes that the ALJ properly considered and gave little weight to both Dr. Lindsay's and Mr. Hoyts's opinions.

### V. Conclusion

For the reasons stated above, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be AFFIRMED.  A separate order will be entered in accordance with this Memorandum Opinion.

DATED this 19th day of June, 2008.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE